**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

STEVEN LUCY,                    :

    Plaintiff,               :

vs.                             :     CA 06-0147-C

LINDA S. MCMAHON,               :
Acting Commissioner of Social
Security,[1]                    :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security terminating his entitlement to disability insurance benefits as of August, 2003. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case . . . and order the entry of a final

---

[1] Linda S. McMahon became the Acting Commissioner of Social Security on January 20, 2007. Accordingly, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, McMahon is substituted for Jo Anne B. Barnhart as the proper defendant in this case.

judgment, and conduct all post-judgment proceedings."); *see also* Doc. 22 (order of reference)) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the arguments of plaintiff's counsel at the January 26, 2007 hearing before the Court,[2] it is determined that the Commissioner's decision terminating benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[3]

Plaintiff alleges continuing disability due to a history of renal failure, back pain, and depression. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant is not engaging in substantial gainful activity.
>
> 2. The claimant has experienced medical improvement since the most recent favorable disability determination.
>
> 3. The claimant's medical improvement is related to his ability to work.
>
> 4. No exception to medical improvement is applicable in

---

[2] The Court granted the defendant's unopposed motion to submit her position in the case on the record. (Docs. 19 & 20)

[3] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (Doc. 21 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

this matter.

5.   The claimant has "severe" impairments, including back problems with pain, and status post chronic renal failure.

6.   The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

7.   The claimant's allegations of pain and functional limitations are not credible.

8.   The claimant retains the . . . following residual functional capacity: no limitations with standing, walking, sitting, lifting and carrying without restrictions; no postural, manipulative or environmental limitations.

9.   The claimant can perform past relevant work.

10.   The claimant is not disabled within the meaning of the Social Security Act.

(Tr. 24-25)  The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

The standard for termination of benefits in this circuit has long been established. *See McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985).

> This court has held that there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability. *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982). Additionally, this court has held that a

> comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

*Id*. Plaintiff contends that the following errors were made in this case: (1) the ALJ erred in rejecting the opinions of two examining mental health professionals, same being consistent with plaintiff's testimony and uncontroverted by any other evidence of record; (2) the ALJ erred in failing to adopt the functional limitations indicated by the medical expert who testified at the hearing, despite claiming to give substantial weight to that doctor's opinion regarding functional abilities; and (3) the ALJ and Appeals Council erred in failing to consider the opinion of the treating physician regarding the level of pain plaintiff experiences. Because the Court finds that the ALJ erred in rejecting the opinions of the two examining mental health professionals,[4] this Court does not address the other assignments of error raised by the plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

In a Report of Contact dated March 17, 2004, Lucy complained to a

---

[4] As part of this issue, plaintiff challenges the ALJ's conclusion that he does not have a severe mental impairment.

disability specialist with the Social Security Administration that he was having sleep problems due to nervousness. (Tr. 134) On January 6, 2005, Lucy complained to his treating physician, Dr. Wallace Purdy, that he had been depressed for a long time; Purdy's diagnoses include a diagnosis of depression and contains the notation "Appointment with psychiatry." (Tr. 226)[5] Dr. Purdy's partner, Dr. Reid Christopher, noted, on July 15, 2005, that plaintiff had a history of depression. (Tr. 234)

In light of the foregoing evidence, Lucy's attorney referred his client to Dr. Donald W. Blanton and Dr. David Hodo for evaluations in August of 2005. (Tr. 205-213) Dr. Blanton performed a mental status examination on August 3, 2005, and as well administered a battery of tests. (Tr. 210-211) Blanton's diagnostic impressions included: (1) post traumatic stress disorder with anxiety and depression; (2) major depression due to bronchitis and chronic pain; and (3) borderline intelligence. (Tr. 211) Blanton completed a mental medical source opinion form and thereon indicated that Lucy had a "marked" degree of limitation with respect to the following activities: (1) understanding detailed or complex instructions; (2) carrying out detailed or

---

[5] In a form completed by plaintiff on January 19, 2005, he alleged nerve problems and difficulty sleeping. (Tr. 147)

complex instructions; (3) remembering detailed or complex instructions; (4) using judgment in detailed or complex work-related decisions; and (5) maintaining attention, concentration or pace for periods of at least two hours. (Tr. 212) Blanton indicated on this form that the noted limitations had lasted for 12 continuous months and that, in fact, the same level of severity had existed for four years. (Tr. 213)

Following a mental status examination of Lucy on August 24, 2005, Dr. Hodo made the following diagnoses: (1) post traumatic stress disorder; (2) major depression, rule out delusional disorder; and (3) borderline mental retardation. (Tr. 206) Hodo noted marked or extreme limitations in all areas rated on the mental medical source form, save for the areas of activities of daily living and deterioration of personal habits (Tr. 207-208), and indicated that those limitations had lasted for 12 months or longer (*id.* at 208).

At the administrative hearing on September 28, 2005, plaintiff testified that he had nightmares which prevented him from sleeping (Tr. 245), the subject of same being "[s]ometimes dead folks, sometimes killing." (Tr. 247) He also complained of seeing things (*id.*): "Like when I drive up, I see something big in the road. But when I get to it, it won't be nothing there." (Tr. 248)

This was the entirety of the evidence regarding plaintiff's mental status before the ALJ for review. In determining that plaintiff did not have a severe mental impairment, the ALJ performed the following analysis:

> I have next considered all of the claimant's current impairments to determine whether he has a medically determinable impairment or combination of impairments that is severe, i.e., one that more than minimally impacts functioning. . . .
>
> I find that the claimant did not allege any mental impairments from the time he filed for disability nor did he claim any mental impairments from December 2000 through his consultative evaluation with Dr. Lindman in January 2004. I find his testimony at the Disability Hearing Officer's hearing on January 2004, reflects he stated that he continued to be disabled due to renal failure, history of rhabdomyolsis, back pain, bronchitis and numbness of his legs and feet. He stated he was unable to work due to chronic back pain; however, he did not mention depression and only stated that he was unable to handle stress and became angry when stressed. On January 11, 2005, the claimant's representative submitted the claimant's Request for Hearing. The claimant presented for an evaluation on August 24, 2005, at the request of the claimant's representative, before Dr. David Hodo, psychiatrist, who found the claimant had post dramatic (traumatic) stress disorder, major depression, rule out delusional disorder and borderline mental retardation. Dr. Hodo found that the claimant had "marked" and "extreme" limitations in his ability to function. On August 3, 2005, the claimant attended an evaluation by Dr. Donald Blanton, PhD., at the request of his representative, in which Dr. Blanton diagnosed post traumatic stress disorder with anxiety and depression and major depression due to bronchitis and chronic pain. No weight is given to the evaluations or Dr. Hodo or Dr. Blanton. There are no other treatment records that support the opinions of these two evaluations that were made at the request of the claimant's representative. The claimant has not attended mental health and

> has not made claims of mental problems to his treating and consultative physicians before the dates set out above. I do not find that the claimant's mental impairments including post traumatic stress disorder with anxiety and depression and major depression are severe impairments. Even if I were to give plaintiff the benefit of the doubt, there is no supporting evidence (outside of the two evaluations requested by his representative); his claims of mental problems with severe limitations have not met the duration requirements, and there is no record of treatment for such.

(Tr. 22)

The Court finds the ALJ's analysis of both the severity issue and the weight to be accorded the evaluations of Drs. Blanton and Hodo is flawed. Taking the consultative evaluation/examination issue first, the Commissioner's regulations make clear that every medical opinion received is evaluated and that "more weight [is given] to the opinion of a source who has examined" the claimant. 20 C.F.R. § 404.1527(d)(1) (2006).

> (3) *Supportability*. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

8

> (4) *Consistency*. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) *Specialization*. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) *Other factors*. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

*Id*. The Eleventh Circuit has underscored the consistency principle, holding that "the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."); *cf. Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We have found 'good cause' to exist where the doctor's opinion was not

bolstered by the evidence, or where the evidence supported a contrary finding. . . . We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records."). The problem in this case is that the ALJ failed to analyze the mental evaluations performed by Drs. Blanton and Hodo in the manner prescribed by the Commissioner's own regulations, 20 C.F.R. § 404.1527; this failure constitutes an improper application of legal standards, *see King v. Barnhart*, 320 F.Supp.2d 1227, 1233 (N.D. Ala. 2004) (ALJ's failure to follow the standards for evaluating opinion evidence set out in 20 C.F.R. § 404.1527 constituted an improper application of a legal standard).

Moreover, the reasons the ALJ gives for not giving these evaluations any weight amount to nothing more than the ALJ's substitution of his own impressions for those of the medical professionals. The suggestion that plaintiff made no complaints of mental problems to treating or consulting physicians before August of 2005 is belied by the evidence of record; plaintiff complained of depression to his treating physician, Dr. Prudy, on January 6, 2005 (Doc. 226) and Purdy's partner, Dr. Christopher, noted plaintiff's history of depression on July 15, 2005 (Tr. 234).[6] In addition, the fact that there are no

---

[6] The ALJ seems to stress the fact that plaintiff's attorney referred him to Drs. Blanton and Hodo; such referrals suggest nothing suspect to this Court.

mental health treatment records to support the mental evaluations of Drs. Blanton and Hodo does nothing to help the Commissioner because the crucial fact here is that no medical evidence of record contradicts the diagnoses and findings of these two evaluators; therefore, it was inappropriate for the ALJ to give no weight to the evaluations. *See Bennett v. Barnhart*, 288 F.Supp.2d 1246, 1255 (N.D. Ala. 2003) ("There is no medical evidence of record contradicting the findings of Drs. Bray and Blotcky. The ALJ merely refused to credit their opinions based upon his own diagnostic impression. This is impermissible.").

The evaluations of Drs. Blanton and Hodo establish that Lucy suffers from a severe mental impairment (if not several severe mental impairments) which has lasted twelve continuous months.[7] *Compare id.* at 207-208 & 212-213 *with* 20 C.F.R. § 404.1521(a) & (b) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work skills. . . . When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–  . . . (3) Understanding, carrying out, and

---

[7] The evaluations of these two mental health professionals clearly establish that the limitations imposed by plaintiff's mental impairments meet the durational requirement. (Tr. 205-213)

remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.") *and McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").[8]

## **CONCLUSION**

In consideration of the foregoing, the Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v.*

---

[8] The ALJ failed to evaluate the severity of Lucy's mental impairments as required in the regulations and by Eleventh Circuit precedent. In *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005), the Eleventh Circuit held that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions[,]" and that the "[f]ailure to do so requires remand." *Id*. at 1214 (citations omitted). The Commissioner's regulations specifically provide that the PRTF or functional analysis contained therein must be completed before an ALJ makes the determination about whether a mental impairment is severe or not severe. 20 C.F.R. § 404.1520a(d)(1) & (2) (2006) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). (1) If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . . (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder."). The ALJ's failure in this case to incorporate the PRTF mode of analysis into his decision represents yet another reason to remand this case to the Commissioner of Social Security for further proceedings.

*Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 5th day of February, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**